A. Miltenberger *v.* J. P. Elam, Tutor, et als.

Tutors have by law the *administration* of the estates of their pupils, but their powers of adminis-
tration do not embrace an authority to contract debts. Any one who deals with a tutor, at
least any one who lends or advances money to a tutor for account of his ward or pays drafts,
exceeding the funds in his hands to their credit, unless said tutor acts within the limits of a pre-
vious legal sanction, does so at his peril. The minors being under an absolute disability, it is in-
cumbent on the party who seeks to recover from them, to show, that their indebtedness was con-
tracted in accordance with the specified legal proceedings, or that the consideration of the in-
debtedness inured to their advantage, to the extent claimed.

APPEAL from the District Court of the parish of Catahoula, *Barry,* J.
Taliaferro and *McGuire & Ray,* for plaintiff and appellant. *Mayo,* for
defendants.

Lea, J. The plaintiff sues for a balance alleged to be due to him on a run-
ning account between himself, as a commission merchant and factor, and
*Samuel Glenn,* the former tutor of the defendants, who at the time were mi-
nors. In 1847, *Samuel Glenn* was appointed tutor to the defendants, and
acted as such until his decease in June, 1852. The property of the minors
consisted of a plantation and slaves, which the tutor continued to work on
their account.

In 1851, he opened an account with the plaintiff, which was not closed at
the time of his death.

This account contains items for drafts accepted and paid, cash advanced,
plantation supplies furnished, interest, commissions, &c.

After the death of the tutor, in consequence of a contest for the new tu-
torship, *Levi Morris* was appointed provisional administrator of the estate, and
shipped the crop of 1852, part of it to the plaintiff, and the remainder else-
where. .

It is contended on the part of the defendants, that when *Glenn* was appoint-
ed tutor, the estate was but little in debt; that he squandered the revenues of
the minors, and contracted debts without any necessity therefor, and without
legal authority to an amount exceeding $20,000, for which they are in no
manner bound; that at the time *Glenn* was their tutor, he had the manage-
ment of three or four separate plantations, two of which were in the vicinity
of the Elam plantation, and that he had a large family of his own to support;
that a large portion of the supplies were furnished for said *Glenn's* individual
use, or for the use of the other plantations under his control, and for his fami-
ly and friends, and that a large amount of the supplies were neither needed
nor used on the plantation of the defendants; and lastly, that of the account,
as made up, a large portion is for illegal, compound, and usurious interest, and
illegal charges.

The general principles by which the rights of the parties must be deter-
mined, we consider as well settled. Those who contract with the representa-
tives of minors, know that those with whom they deal, are acting in a fiduci-
ary capacity, and moreover, that they are acting on behalf of those who are
by the law deemed incapable of acting for themselves. Tutors have, by the
law, the *administration* of the estates of their pupils, but the powers of ad-

MILTENBERGER.
*v.*
ELAM.

ministration do not embrace an authority to contract debts. This is not left to inference, the prohibition is absolute.

"The tutor cannot borrow for the minor, without an authority from the Judge, granted on the advice of a meeting of the family." The object of the law is manifest; it was intended to prohibit the tutor from doing precisely what it is contended in this case that he had a right to do, to wit, to embarrass the estate of the minors with debts, thus practically alienating it. Any one who deals with a tutor therefore, at least any one who lends or advances money to a tutor for account of his ward, or pay, drafts exceeding the funds actually in hand to their credit, unless said tutor acts within the limits of a previous legal sanction, does so at his peril. The minors being under an absolute disability to contract, it is incumbent upon the party who seeks to recover from them to show that the indebtedness was contracted in accordance with the specified legal proceedings, or that the consideration of the indebtedness inured to their advantage, to the extent claimed. To recognize the doctrine contended for by the plaintiff's counsel, would place the estate of every minor entirely at the disposal of a corrupt or even an improvident tutor. The law has wisely provided against any such result.

It is unnecessary to inquire whether the plaintiff was or was not wrong in placing the proceeds of the shipment made by *Morris* to the account of the minors as contracted by *Glenn*. If the plaintiff has a good and valid claim against the minors, sufficient to absorb the proceeds of that shipment, he is entitled to a judgment in his favor.

The only question then is one of fact. To what extent has the plaintiff advanced money, or furnished supplies, which are shown to have inured to the advantage of the minors ; and after crediting him with such sum, what balance exists in his favor or aginst him ?

The plaintiff is chargeable with the nett proceeds of sales of cotton amounting in all to $16,114 41, including the proceeds of the shipment made by *Morris*.

The evidence shows that the drafts given to *Emerson*, to *Buchanan, Carroll & Co.* and to *Mrs. Thomas*, amounting in all to $4324 25, were justly chargeable to the estate, having been given in liquidation of actual liabilities due by the succession ; nor is there any dispute about the supplies furnished by the plaintiff after *Morris* had charge of the place, these amounted in all to $739 22, making, with the undisputed drafts, an aggregate credit of $5063 47. The remainder of the items in plaintiff's account are disputed. The plaintiff's claim, if allowed, would not only absorb the entire proceeds, amounting as above stated to $16,114 91, but would leave the defendants indebted to the plaintiff in the sum of $3520 47 ; an indebtedness growing out of transactions covering a space of less than two years. The very nature and extent of the transactions were sufficient to put a prudent person upon inquiry, especially when it is considered that they were all based, as is alleged by counsel, upon the supposed ultimate liability of minors.

It is manifest, that under the pleadings and evidence, the minors can be held responsible only for such advances as were spent in liquidating debts actually due by them, and such supplies as are shown to have enured to their advantage. A reference to the evidence shows that the tutor *Glenn* mixed up the monied transactions on behalf of the minors with his own, and sometimes with those of his neighbors, in such a manner as to make it impossible to distinguish between them with any certainty. The evidence is altogether too vague and uncertain

to maintain a judgment for any speciffc amounts, except those above referred to.

The District Judge has allowed to the plaintiff a credit upon the disputed items for supplies and advances, amounting to $4255; of what items this aggregate is made up we are not informed, but it exceeds any amount which we consider to be established by the evidence, and is perhaps based upon what may be considered an approximative and equitable estimate of the amount of supplies probably needed on a plantation such as that of the minors during the period of time in which *Glenn* was tutor.

The defendants have acquiesced in the judgment of the District Court, and nothing in the evidence would justify us in making any change in favor of the plaintiff.

Judgment affirmed.